UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

AIMEE LACROIX and ERIN NELSON,

             Plaintiffs,                        CASE NO.:

v.

M/Y CENTENNIAL PRINCESS, a 2021
motor yacht bearing IMO No.
VSC855331122, Official No. 1322854, her
engines, tackle, rigging, boilers, apparel,
appurtenances, dinghies, furniture, etc., in
rem, ROSEBUD 1265, LLC, a New York
Limited Liability Company as owner of M/y
CENTENNIAL PRINCESS, CENTENNIAL
ELEVATOR INDUSTRIES, INC., a New
York Profit Corporation, and RICHARD
THOMAS L'ESPERANCE, in his individual
capacity,

             Defendants.

_____/

## **VERIFIED COMPLAINT**

       COMES NOW the Plaintiffs, AIMEE LACROIX (hereinafter "LACROIX") and ERIN

NELSON (hereinafter "NELSON") (hereinafter collectively "PLAINTIFFS"), by and through

their undersigned Counsel, and sue the Defendants, M/Y CENTENNIAL PRINCESS, a 2021

motor yacht bearing IMO No. VSC855331122, Official No. 1322854, her engines, tackle, rigging,

boilers, apparel, appurtenances, dinghies, furniture, etc., in rem, (hereinafter "CENTENNIAL

PRINCESS" or "Defendant Vessel"), ROSEBUD 1265, LLC, a New York Limited Liability

Company as owner of M/Y CENTENNIAL PRINCESS (hereinafter "ROSEBUD"),

CENTENNIAL ELEVATOR INDUSTRIES, INC., a New York Profit Corporation (hereinafter

"CENTENNIAL ELEVATOR"), and RICHARD THOMAS L'ESPERANCE, in his individual

capacity (hereinafter "L'ESPERANCE") (hereinafter collectively referred to as the "DEFENDANTS"), alleging the following:

## JURISDICTION, VENUE, AND PARTIES

1.     This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.     This Court is vested with federal question jurisdiction over Plaintiff's claims arising under the Seaman's Wage Act, 46 U.S.C. § 10313 and the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C § 1311 and 29 U.S.C. § 216(b).

3.     This is an *in rem* action to foreclose on maritime liens within the Admiralty and Maritime jurisdiction of this Honorable Court within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and pursuant to 28 U.S.C. §1333 and 46 U.S.C. § 10313.

4.     The Court is granted with supplemental jurisdiction over PLAINTIFFS' related state law claims pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Defendants, CENTENNIAL PRINCESS and ROSEBUD 1265, LLC because of their systematic and continuous contact with the forum, particularly the location of the Defendant Vessel being consistently located in South Florida.

6.     This Court has personal jurisdiction over Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE because of their systematic and continuous contact with the forum as the employers of the Plaintiffs who did not pay the Plaintiffs earned wages for work performed on Florida's navigable waters, violating the Seaman's Wage Act, 46 U.S.C. §§ 10313, 10504 within the state of Florida.

7.     Upon information and belief, the Defendant Vessel, CENTENNIAL PRINCESS is located in Palm Beach County, within the Southern District of Florida and within the jurisdiction of this Honorable Court.

8.     Upon information and belief, the Defendant Vessel was owned at all time material by Defendant, ROSEBUD.

9.     Upon information and belief and at all time material, the Plaintiffs were employed by CENTENNIAL ELEVATOR and worked on board the CENTENNIAL PRINCESS.

10.     At all times material hereto and currently, Defendant, RICHARD THOMAS L'ESPERANCE, is the owner and operator of CENTENNIAL ELEVATOR.

11.     Upon information and belief, CENTENNIAL ELEVATOR, was and is a New York Profit Corporation which conducts business through the operation of ROSEBUD and the Defendant Vessel as well as the hiring and employment of the Plaintiffs in the state of Florida.

12.     Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C §1391(b), because all actions giving rise to this claim arose in the Judicial Circuit and because it is believed that the Defendant Vessel is located within Palm Beach County, Florida.

13.     All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

14.     In the course and scope of its business, CENTENNIAL ELEVATOR employed at least two (2) employees to work onboard the CENTENNIAL PRINCESS within the meaning of the FLSA.

15.     In the course and scope of its business, CENTENNIAL ELEVATOR had/has many employees who regularly handled, sold, and otherwise worked on goods and materials that were moved in and/or produced for commerce by any person.

16.     In the course and scope of its business, CENTENNIAL ELEVATOR engaged in and continues to engage in interstate commerce within the meaning of the FLSA.

17.     CENTENNIAL ELEVATOR had/has annual gross sales and/or business volume of $500,000 or more.

18.     At all times material hereto, LACROIX was, and is, a resident of Fort Lauderdale, Florida, and, despite being misclassified as an independent contractor, was an "employee" of CENTENNIAL ELEVATOR as defined by the FLSA.

19.     At all times material hereto, NELSON was, and is, a resident of Fort Lauderdale, Florida, and, despite being misclassified as an independent contractor, was an "employee" of CENTENNIAL ELEVATOR as defined by the FLSA.

20.     CENTENNIAL ELEVATOR controlled PLAINTIFFS' duties, hours worked, equipment and supplies used, and compensation. Accordingly, CENTENNIAL ELEVATOR was PLAINTIFFS' "employer" as defined by the FLSA.

21.     At all times material hereto, L'ESPERANCE was and continues to serve as Owner of CENTENNIAL ELEVATOR, and controlled PLAINTIFFS' duties, hours worked, equipment and supplies used, and compensation. Accordingly, L'ESPERANCE was an "employer" of PLAINTIFFS within the meaning of 29 U.S.C. § 203(d).

**<u>INTRODUCTION</u>**

22.     PLAINTIFFS bring this action to foreclose on maritime liens against Defendant Vessel and ROSEBUD for unpaid crew wages pursuant to 46 U.S.C. § 10313 and against

CENTENNIAL ELEVATOR and L'ESPERANCE for failure to pay minimum wages in violation of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) and breach of contract for failure to pay PLAINTIFFS their weekly pay for a total of three weeks.

23.    Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, have violated the FLSA by misclassifying its yacht employees as "independent contractors". Misclassification of employees as independent contractors "deprives employees of critical workplace protections and employment benefits to which they are legally entitled." *See* Statement of Secretary of Labor Hilda L. Solis on introduction of legislation regarding issue of misclassification, U.S. Department of Labor, Wage and Hour Division (April 22, 2010), available online at www.dol.gov.

24.    Misclassification of workers also costs the government billions of dollars in unpaid taxes. *See* Annual Report of the White House Task Force on the Middle Class, Executive Summary at "v" (February 2010), available online at *http://www.whitehouse.gov/strongmiddleclass/reports*.

## FACTUAL ALLEGATIONS

25.    Plaintiff, AIMEE LACROIX, was employed as a full-time First Mate/Stewardess on the Defendant Vessel located in Broward County, Florida, by CENTENNIAL ELEVATOR beginning on December 15, 2021 and remained in that position until April 9, 2022.

26.    Plaintiff, ERIN NELSON, was employed as a full-time Captain on the Defendant Vessel located in Broward County, Florida, by CENTENNIAL ELEVATOR INDUSTRIES, INC. beginning on December 15, 2021 and remained in that position until April 9, 2022.

27.    LACROIX's rate of pay while working for CENTENNIAL ELEVATOR onboard CENTENNIAL PRINCESS during the relevant times of her employment was $60,000.00 per year, or $1,153.85 per week.

28.     NELSON's rate of pay while working for CENTENNIAL ELEVATOR onboard CENTENNIAL PRINCESS during the relevant times of his employment was $100,000.00 per year, or $1,923.08 per week.

29.     Defendant, CENTENNIAL ELEVATOR, classified PLAINTIFFS as independent contractors despite holding them out to be employees of CENTENNIAL ELEVATOR, thereby avoiding any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

30.     PLAINTIFFS were required to perform the tasks as assigned by Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, at the location(s) as designated by CENTENNIAL ELEVATOR and L'ESPERANCE to the standards and requirements as specified by CENTENNIAL ELEVATOR and L'ESPERANCE.

31.     All of the products, tools, and equipment used by PLAINTIFFS were owned, maintained, and provided by ROSEBUD or CENTENNIAL ELEVATOR and were accessible to PLAINTIFFS during their shifts.

32.     PLAINTIFFS' rates of pay were preset by Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE.

33.     PLAINTIFFS regularly communicated with Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, during the performance of their duties.

34.     PLAINTIFFS were required to notify Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, specifically L'ESPERANCE, whenever PLAINTIFFS completed their job assignments.

35.     PLAINTIFFS were economically dependent upon Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, for their livelihoods.

36.     Throughout their employment with CENTENNIAL ELEVATOR onboard the Defendant Vessel, PLAINTIFFS exhibited exemplary job performance and received no disciplinary warnings or demotions.

37.     On April 6, 2022, PLAINTIFFS notified CENTENNIAL ELEVATOR and L'ESPERANCE that they were resigning from their employment with CENTENNIAL ELEVATOR and/or ROSEBUD as a result of three (3) weeks of unpaid wages from March 14, 2022 through April 3, 2022.

38.     Following notice of their resignations, PLAINTIFFS proceeded to wrap up all work onboard the CENTENNIAL PRINCESS in the following days including clearing customs upon arrival in Palm Beach County, Florida. PLAINTIFFS employment ended on April 9, 2022.

39.     At the time PLAINTIFFS' employment ended, LACROIX was still owed for the prior three (3) weeks of pay at $1,153.85 per week or $3,461.55 for days worked between March 14, 2022 through April 3, 2022.

40.     Additionally, CENTENNIAL ELEVATOR failed to pay LACROIX for all work performed between April 4, 2022 and April 9, 2022, or six (6) days at a rate of $164.84 per day, totaling $989.04.

41.     In total, LACROIX is owed $4,450.59 for all days worked between March 14, 2022 and April 9, 2022.

42.     At the time PLAINTIFFS' employment ended, NELSON was still owed for the prior three (3) weeks of pay at $1,923.08 per week or $5,769.24 for days worked between March 14, 2022 through April 3, 2022.

43.     Additionally, CENTENNIAL ELEVATOR failed to pay NELSON for all work performed between April 4, 2022 and April 9, 2022, or six (6) days at a rate of $274.73 per day, totaling $1,648.38.

44.     In total, NELSON is owed $7,417.62 for all days worked between March 14, 2022 and April 9, 2022.

45.     DEFENDANTS knowingly and willingly refused to pay PLAINTIFFS their legally entitled wages.

### COUNT I –UNPAID WAGES PURSUANT TO 46 U.S.C. § 10313
### AS TO PLAINTIFF, AIMEE LACROIX
### (AGAINST DEFENDANT VESSEL AND ROSEBUD)

46.     Plaintiff, AIMEE LACROIX, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

47.     LACROIX brings this count *in rem* against the Defendant Vessel to enforce a maritime lien for unpaid wages owed to LACROIX in connection with her employment aboard the Defendant Vessel, pursuant to 46 U.S.C. § 10313.

48.     In or about December 2021, LACROIX was hired by CENTENNIAL ELEVATOR to serve as a crewmember aboard the CENTENNIAL PRINCESS.

49.     More specifically, and all times material hereto, LACROIX was hired to serve as the first mate/stewardess aboard the CENTENNIAL PRINCESS.

50.     Upon information and belief, during LACROIX's employment, the CENTENNIAL PRINCESS was registered as recreational yacht out of Port Washington, New York.

51.     As such, and at all time material hereto, LACROIX was considered a seaman pursuant to 46 U.S.C. § 10101 and within the ambits of 46 U.S.C. § 10313.

52.     As compensation for serving as a crewmember, LACROIX was to be paid $60,000.00 per year.

53.     In addition, LACROIX received various employment benefits including, without limitation, the promise of health insurance contributions, one week of paid vacation, and reimbursement for any employment related costs that were made out of pocket.

54.     From on or about December 2021 through April 9, 2022, LACROIX worked aboard the Defendant Vessel.

55.     On or about April 6, 2022, LACROIX notified L'ESPERANCE of her resignation from her employment after she did not receive payment for the past three (3) weeks of work from March 14, 2022 through April 3, 2022.

56.     Following her notice, LACROIX continued working onboard the CENTENNIAL PRINCESS, wrapping up work as the yacht went through customs in Palm Beach County, Florida, until April 9, 2022.

57.     LACROIX did not receive payment for any days worked from April 4, 2022 through April 9, 2022.

58.     As such, LACROIX was not promptly paid for her wages earned from March 14, 2022 through April 9, 2022.

59.     As a result of the foregoing, LACROIX has been significantly damaged.

60.     The failure to pay LACROIX her wages violates 46 U.S.C. § 10313 and entitles LACROIX to recover her wages against Defendant Vessel in the amount of $4,450.59, representative of three (3) weeks and six (6) days of pay.

61.     LACROIX has made repeated demands for the payment of the aforementioned amounts.

62.     Despite LACROIX's efforts, her wages have not been paid in full.

63.     The failure to pay LACROIX's wages in connection with her employment aboard the Defendant Vessel gives rise to a maritime lien against the CENTENNIAL PRINCESS.

64.     As a result of the foregoing, Plaintiff, LACROIX, seeks to foreclose her maritime lien for wages through the arrest and sale of the Defendant Vessel.

65.     Therefore, it is respectfully requested that this Honorable Court issue a Summons and Warrant for the arrest of the CENTENNIAL PRINCESS and an Order for the sale of the Defendant Vessel thereby allowing Plaintiff, LACROIX, to recoup the wages owed for her employment as a crew member aboard the Defendant Vessel, together with all damages shown at trial and all other losses and expenses permitted by law, including, but not limited to, costs, attorney's fees, and interest.

WHEREFORE, Plaintiff, AIMIEE LACROIX, respectfully requests that this Court:

a.  Issue a warrant for the arrest of the Defendant Vessel and that all persons with an interest therein be cited to appear and answer the matter aforesaid;

b.  That the Defendant Vessel be arrested pursuant to Supplemental Rule C to the extent of the Plaintiff's maritime lien, plus all litigation costs and prejudgment interest;

c.  That the Defendant Vessel, her engines, tackle, rigging, dinghies, apparel, equipment, appurtenances, furniture and inventory be condemned and sold, and the proceeds be applied to pay the Plaintiff, LACROIX, a sum equal to (1) the extent of her maritime lien asserted above and (2) a sum equal to the damages found by this Court to have been suffered by the Plaintiff, plus interest, litigation costs and arrest costs.

d.  Grant any and all other relief deemed just and proper of this Court.

## COUNT II –UNPAID WAGES PURSUANT TO 46 U.S.C. § 10313
## AS TO PLAINTIFF, ERIN NELSON
## (AGAINST DEFENDANT VESSEL AND ROSEBUD)

66.     Plaintiff, ERIN NELSON, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

67.     NELSON brings this count *in rem* against the Defendant Vessel to enforce a maritime lien for unpaid wages owed to NELSON in connection with his employment aboard the Defendant Vessel, pursuant to 46 U.S.C. § 10313.

68.     In or about December 2021, NELSON was hired by CENTENNIAL ELEVATOR to serve as a crewmember aboard the CENTENNIAL PRINCESS.

69.     More specifically, and all times material hereto, NELSON was hired to serve as the captain aboard the CENTENNIAL PRINCESS.

70.     Upon information and belief, during NELSON's employment, the CENTENNIAL PRINCESS was registered as recreational yacht out of Port Washington, New York.

71.     As such, and at all time material hereto, NELSON was considered a seaman pursuant to 46 U.S.C. § 10101 and within the ambits of 46 U.S.C. § 10313.

72.     As compensation for serving as a crewmember, NELSON was to be paid $100,000.00 per year.

73.     In addition, NELSON received various employment benefits including, without limitation, the promise of health insurance contributions, one week of paid vacation, and reimbursement for any employment related costs that were made out of pocket.

74.     From on or about December 2021 through April 9, 2022, NELSON worked aboard the Defendant Vessel.

75.     On or about April 6, 2022, NELSON notified L'ESPERANCE of his resignation from his employment after he did not receive payment for the past three (3) weeks of work from March 14, 2022 through April 3, 2022.

76.     Following his notice, NELSON continued working onboard the CENTENNIAL PRINCESS, wrapping up work as the motor yacht went through customs in Palm Beach County, Florida, until April 9, 2022.

77.     NELSON did not receive payment for any days worked from April 4, 2022 through April 9, 2022.

78.     As such, NELSON was not promptly paid for his wages earned from March 14, 2022 through April 9, 2022.

79.     As a result of the foregoing, NELSON has been significantly damaged.

80.     The failure to pay NELSON his wages violates 46 U.S.C. § 10313 and entitles NELSON to recover his wages against Defendant Vessel in the amount of $7,417.62, representative of three (3) weeks and six (6) days of pay.

81.     NELSON has made repeated demands for the payment of the aforementioned amounts.

82.     Despite NELSON's efforts, his wages have not been paid in full.

83.     The failure to pay NELSON's wages in connection with his employment aboard the Defendant Vessel gives rise to a maritime lien against the CENTENNIAL PRINCESS.

84.     As a result of the foregoing, Plaintiff, NELSON, seeks to foreclose his maritime lien for wages through the arrest and sale of the Defendant Vessel.

85.     Therefore, it is respectfully requested that this Honorable Court issue a Summons and Warrant for the arrest of the CENTENNIAL PRINCESS and an Order for the sale of the

Defendant Vessel thereby allowing Plaintiff, NELSON, to recoup the wages owed for his employment as a crew member aboard the Defendant Vessel, together with all damages shown at trial and all other losses and expenses permitted by law, including, but not limited to, costs, attorney's fees, and interest.

WHEREFORE, Plaintiff, ERIN NELSON, respectfully requests that this Court:

a.  Issue a warrant for the arrest of the Defendant Vessel and that all persons with an interest therein be cited to appear and answer the matter aforesaid;

b.  That the Defendant Vessel be arrested pursuant to Supplemental Rule C to the extent of the Plaintiff's maritime lien, plus all litigation costs and prejudgment interest;

c.  That the Defendant Vessel, her engines, tackle, rigging, dinghies, apparel, equipment, appurtenances, furniture and inventory be condemned and sold, and the proceeds be applied to pay the Plaintiff, NELSON, a sum equal to (1) the extent of his maritime lien asserted above and (2) a sum equal to the damages found by this Court to have been suffered by the Plaintiff, plus interest, litigation costs and arrest costs.

d.  Grant any and all other relief deemed just and proper of this Court.

## COUNT III – VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA") AS TO PLAINTIFF, AIMEE LACROIX (AGAINST CENTENNIAL ELEVATOR AND L'ESPERANCE)

86.   Plaintiff, AIMEE LACROIX, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

87.   Under the Fair Labor Standards Act, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation

for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

88.    "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b).

89.    Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE violated 29 U.S.C. § 206 by failing to compensate LACROIX at a rate not less than $10.00 per hour for her hours worked between March 14, 2022 and April 9, 2022.

90.    Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, are not exempt from the minimum wage provision of the FLSA. Withholding pay for hours worked is a violation of the Fair Labor Standards Act.

91.    Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, actions were intentional, reckless or malicious.

92.    Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, actions were not done in good faith.

93.    As a direct, foreseeable, and proximate cause of Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, actions, LACROIX has been damaged.

94.    LACROIX brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

95.    Specifically, LACROIX, who worked an average of 60 hours per week, is entitled to (a) $2,316.00 of unpaid minimum wages to which she was entitled, and (b) an additional equal amount of $2,316.00 as liquidated damages. In total, LACROIX is entitled to $4,632.00 for

Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, failure to pay LACROIX her entitled minimum wages.

96.     LACROIX seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, AIMEE LACROIX, demands judgment against Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper. LACROIX brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

## COUNT IV – VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA") AS TO PLAINTIFF, ERIN NELSON (AGAINST CENTENNIAL ELEVATOR AND L'ESPERANCE)

97.     Plaintiff, ERIN NELSON, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

98.     Under the Fair Labor Standards Act, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

99.     "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b).

100.     Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, violated 29 U.S.C. § 206 by failing to compensate NELSON at a rate not less than $10.00 per hour for his hours worked between March 14, 2022 and April 9, 2022.

101.     Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, are not exempt from the minimum wage provision of the FLSA. Withholding pay for hours worked is a violation of the Fair Labor Standards Act.

102.     Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, actions were intentional, reckless or malicious.

103.     Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, actions were not done in good faith.

104.     As a direct, foreseeable, and proximate cause of Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, actions, NELSON has been damaged.

105.     NELSON brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that he is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

106.     Specifically, NELSON, who worked an average of 60 hours per week, is entitled to (a) $2,316.00 of unpaid minimum wages to which he was entitled, and (b) an additional equal amount of $2,316.00 as liquidated damages. In total, NELSON is entitled to $4,632.00 for Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE's, failure to pay NELSON his entitled minimum wages.

107.     NELSON seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, ERIN NELSON, demands judgment against Defendants, CENTENNIAL ELEVATOR and L'ESPERANCE, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper. NELSON brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that he is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

**COUNT V – BREACH OF CONTRACT – UNPAID WAGES
AS TO PLAINTIFF, AIMEE LACROIX, AGAINST DEFENDANT,
CENTENNIAL ELEVATOR INDUSTRIES, INC.**

108.     Plaintiff, AIMEE LACROIX, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

109.     On or about December 15, 2021, LACROIX began working for CENTENNIAL ELEVATOR onboard the CENTENNIAL PRINCESS. At that time, it was agreed upon between the parties that LACROIX would earn a guaranteed minimum salary of $60,000.00 per year, or $1,153.85 per week.

110.     LACROIX performed the services requested and required of her, but, despite her demands therefor, she has not been paid. LACROIX is owed at a minimum, for her weekly rate of $1,153.85, at a minimum, for three (3) weeks and six (6) days of work, for a total gross pay of $4,450.59.

111.     LACROIX has performed all conditions precedent to be performed by her.

112.     CENTENNIAL ELEVATOR has failed to pay a balance of a minimum of $4,450.59 of an agreed oral agreement.

113.     CENTENNIAL ELEVATOR thus breached the oral contract by failing to pay LACROIX her promised and due wages for services performed.

114.     As a direct and proximate result of CENTENNIAL ELEVATOR's breach of contract, LACROIX has suffered damages in the amount of wages that were not paid to her.

115.     As this is an action for unpaid wages, LACROIX is entitled to recover her costs and attorney's fees pursuant to §448.08, Fla. Stat.

WHEREFORE, Plaintiff, AIMEE LACROIX, demands judgment against CENTENNIAL ELEVATOR INDUSTRIES, INC., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

### COUNT VI – BREACH OF CONTRACT – UNPAID WAGES AS TO PLAINTIFF, ERIN NELSON, AGAINST DEFENDANT, CENTENNIAL ELEVATOR INDUSTRIES, INC.

116.     Plaintiff, ERIN NELSON, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

117.     On or about December 15, 2021, NELSON, began working for CENTENNIAL ELEVATOR onboard the CENTENNIAL PRINCESS. At that time, it was agreed upon between the parties that NELSON, would earn a guaranteed minimum salary of $100,000.00 per year, or $1,923.08 per week.

118.     NELSON, performed the services requested and required of him, but, despite his demands therefor, he has not been paid. NELSON, is owed at a minimum, for his weekly rate of $1,923.08, at a minimum, for three (3) weeks and six (6) days of work, for a total gross pay of $7,417.62.

119.     NELSON has performed all conditions precedent to be performed by him.

120.     CENTENNIAL ELEVATOR has failed to pay a balance of a minimum of $7,417.62 of an agreed oral agreement.

121.    CENTENNIAL ELEVATOR thus breached the oral contract by failing to pay NELSON his promised and due wages for services performed.

122.    As a direct and proximate result of CENTENNIAL ELEVATOR's breach of contract, NELSON has suffered damages in the amount of wages that were not paid to him.

123.    As this is an action for unpaid wages, NELSON is entitled to recover his costs and attorney's fees pursuant to §448.08, Fla. Stat.

WHEREFORE, Plaintiff, ERIN NELSON, demands judgment against CENTENNIAL ELEVATOR INDUSTRIES, INC., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## COUNT VII – QUANTUM MERUIT AS TO PLAINTIFF, AIMEE LACROIX, AGAINST DEFENDANT, CENTENNIAL ELEVATOR INDUSTRIES, INC.

124.    Plaintiff, AIMEE LACROIX, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

125.    In providing services to CENTENNIAL ELEVATOR, LACROIX acted under an express or implied, oral or written, agreement or request from CENTENNIAL ELEVATOR for the work she performed. CENTENNIAL ELEVATOR classified LACROIX as an "independent contractor."

126.    While CENTENNIAL ELEVATOR classified LACROIX as an "independent contractor," the nature of the services she performed and the manner in which she performed said services made it clear that LACROIX was actually an employee. CENTENNIAL ELEVATOR was in complete control of the manner in which LACROIX as an "independent contractor" performed her services, scheduled her working hours and job assignments, and provided all of the tools and supplies necessary for LACROIX to perform her job.

127.    As an "independent contractor" LACROIX provided a benefit to CENTENNIAL ELEVATOR by performing work as an employee under the law and within the agreed upon terms of employment as fully controlled and scheduled by CENTENNIAL.

128.    Despite providing the services set forth in the agreement between the parties, CENTENNIAL ELEVATOR failed to pay LACROIX any amount for the first mate/stewardess services she provided between March 14, 2022 and when her employment ended on April 9, 2022.

129.    Although LACROIX was actually an employee, CENTENNIAL ELEVATOR failed to pay for that benefit by misclassifying LACROIX as an independent contractor and avoided any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

130.    CENTENNIAL ELEVATOR's conduct, as set forth above, in misclassifying LACROIX as an independent contractor, renders it liable under the common law doctrine of quantum meruit.

131.    Since LACROIX was not properly paid her earned wages for the period of March 14, 2022 through April 9, 2022, CENTENNIAL ELEVATOR has failed and/or refused to pay LACROIX the reasonable value for the services rendered and accepted.

132.    To meet the ends of justice, this Court should award the reasonable value of services rendered and accepted in an amount to be proved at trial.

WHEREFORE, Plaintiff, AIMEE LACROIX, demands judgment against CENTENNIAL ELEVATOR INDUSTRIES, INC., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## COUNT VIII – QUANTUM MERUIT AS TO PLAINTIFF, ERIN NELSON, AGAINST DEFENDANT, CENTENNIAL ELEVATOR INDUSTRIES, INC.

133.    Plaintiff, ERIN NELSON, realleges and incorporates the allegations in paragraphs 1 through 45 above as if fully set forth herein.

134.    In providing services to CENTENNIAL ELEVATOR, NELSON acted under an express or implied, oral or written, agreement or request from CENTENNIAL ELEVATOR for the work he performed. CENTENNIAL ELEVATOR classified NELSON as an "independent contractor."

135.    While CENTENNIAL ELEVATOR classified NELSON as an "independent contractor," the nature of the services he performed and the manner in which he performed said services made it clear that NELSON was actually an employee. CENTENNIAL ELEVATOR was in complete control of the manner in which NELSON as an "independent contractor" performed his services, scheduled his working hours and job assignments, and provided all of the tools and supplies necessary for NELSON to perform his job.

136.    As an "independent contractor" NELSON provided a benefit to CENTENNIAL ELEVATOR by performing work as an employee under the law and within the agreed upon terms of employment as fully controlled and scheduled by CENTENNIAL ELEVATOR.

137.    Despite providing the services set forth in the agreement between the parties, CENTENNIAL ELEVATOR failed to pay NELSON any amount for the captain services he provided between March 14, 2022 and when his employment ended on April 9, 2022.

138.    Although NELSON was actually an employee, CENTENNIAL ELEVATOR failed to pay for that benefit by misclassifying NELSON as an independent contractor and avoided any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

139.    CENTENNIAL ELEVATOR's conduct, as set forth above, in misclassifying NELSON as an independent contractor, renders it liable under the common law doctrine of quantum meruit.

140.    Since NELSON was not properly paid his earned wages for the period of March 14, 2022 through April 9, 2022, CENTENNIAL ELEVATOR has failed and/or refused to pay NELSON the reasonable value for the services rendered and accepted.

141.    To meet the ends of justice, this Court should award the reasonable value of services rendered and accepted in an amount to be proved at trial.

WHEREFORE, Plaintiff, ERIN NELSON, demands judgment against CENTENNIAL ELEVATOR INDUSTRIES, INC., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs, AIMEE LACROIX and ERIN NELSON, demand a trial by jury on all issues so triable.

Dated July 5, 2022.

Respectfully submitted,

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**_____
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQUIRE
Florida Bar No.: 1010423
Primary Email: greg@sconzolawoffice.com
Primary Email: samantha@sconzolawoffice.com
Secondary Email: alexa@sconzolawoffice.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

AIMEE LACROIX and ERIN NELSON,

              Plaintiffs,                             CASE NO.:

v.

M/Y CENTENNIAL PRINCESS, a 2021
motor yacht bearing IMO No.
VSC855331122, Official No. 1322854, her
engines, tackle, rigging, boilers, apparel,
appurtenances, dinghies, furniture, etc., in
rem, ROSEBUD 1265, LLC, a New York
Limited Liability Company as owner of M/Y
CENTENNIAL PRINCESS, CENTENNIAL
ELEVATOR INDUSTRIES, INC., a New
York Profit Corporation, and RICHARD
THOMAS L'ESPERANCE, in his individual
capacity,

              Defendants.
_____/

## DECLARATION OF ERIN NELSON

I, Erin Nelson, make this Declaration Under Penalty of Perjury, and declare that the statements below are true, and state:

My name is Erin Nelson. I have reviewed the Verified Complaint, and state that the facts which pertain to me are true and accurate to the best of my knowledge and belief.

I understand that a false statement in this declaration will subject me to penalties for perjury.

I declare under penalty of perjury that the foregoing is true and correct.


_____            Date: 07 / 01 / 2022
Erin Nelson                                       _____

Doc ID: bd4da7b80ce0240e3c93841a409fee639a26717d

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

AIMEE LACROIX and ERIN NELSON,

                Plaintiffs,                           CASE NO.:

v.

M/Y CENTENNIAL PRINCESS, a 2021
motor yacht bearing IMO No.
VSC855331122, Official No. 1322854, her
engines, tackle, rigging, boilers, apparel,
appurtenances, dinghies, furniture, etc., in
rem, ROSEBUD 1265, LLC, a New York
Limited Liability Company as owner of M/Y
CENTENNIAL PRINCESS, CENTENNIAL
ELEVATOR INDUSTRIES, INC., a New
York Profit Corporation, and RICHARD
THOMAS L'ESPERANCE, in his individual
capacity,

                Defendants.

_____/

**<u>DECLARATION OF AIMEE LACROIX</u>**

I, Aimee LaCroix, make this Declaration Under Penalty of Perjury, and declare that the statements below are true, and state:

My name is Aimee LaCroix. I have reviewed the Verified Complaint, and state that the facts which pertain to me are true and accurate to the best of my knowledge and belief.

I understand that a false statement in this declaration will subject me to penalties for perjury.

I declare under penalty of perjury that the foregoing is true and correct.

_____            Date: 07 / 01 / 2022
Aimee LaCroix